NOT FOR PUBLICATION                                                                             CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    )
SCHNEIDER & MARQUARD, INC.,         )
                                    )
         Plaintiff,                 )           Civil Action No.: 07-182 (JLL)
                                    )
v.                                  )
                                    )           OPINION
FACIL, LLC,                         )
                                    )
         Defendant.                 )
_____)

**LINARES**, District Judge.

This matter comes before the Court on the motion for summary judgment filed by Defendant Facil, LLC ("Facil"). Plaintiff Schneider & Marquard, Inc. ("S&M") commenced this action alleging that Facil breached an agreement with S&M for the purchase of retaining rings for automotive parts. Jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332. This Court has considered the submissions in support of and in opposition to the motion and decides this matter without oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Facil's motion for summary judgment is granted.

## BACKGROUND

S&M manufacturers retaining rings. Facil was a Fastener Service Provider (FSP) established in 1999 for the purpose of supplying Johnson Controls, Inc. ("JCI") "all fastener requirements for 65 +/- assembly facilities." (Index of Exs., Ex. G, Decl. of David J. Nenno

(member of Facil's Board of Directors).)  In 2002, Facil's program was expanded into Ford Motor Company ("Ford") in support of Ford's Chicago assembly plant. (Id.)  Although Facil supplied other customers, by 2006, JCI and Ford represented over 80% of Facil's business.  (Id.)

In 2003 Facil requested quotes from S&M for four types of retaining rings.  (Stmt. of Mat'l Facts Not in Dispute, ¶ 1 [hereinafter "Def.'s Stmt. of Facts"].)  The request for quote listed the four parts and the estimated annual usage ("EAU") for each part.  (Index of Exs., Ex. A.)

Via a purchase order in 2005, Facil awarded the manufacture of two of the parts to S&M. (Def.'s Stmt. of Facts, ¶¶ 4, 5.)  It is undisputed that S&M spent approximately $132,000 updating its equipment and facilities in order to produce the parts sold to Facil.  (Compl. ¶ 9.)  In 2006, Facil reissued a Purchase Order for these two parts.  (Def.'s Stmt. of Facts, ¶ 5.)  The 2006 Purchase Order states that it is a "Blanket" purchase order ("Purchase Order") with no stop date. (Index of Exs., Ex. C.)[1]  The Purchase Order lists a unit price, but no quantity of parts, designating that it is blanket order, and for delivery date, it says "see release."  (Id.)  The Purchase Order also has a section where parties may check off whether the Purchase Order includes enclosures; no boxes are checked, including ones labeled "purchase conditions" and "contract conditions," and no additional terms regarding the relationship between the parties appear on the Purchase Order. (Id.)  Pursuant to the Purchase Order, specific quantities of parts were requested by Facil via release.  (Id. at Ex. D.)  The releases Facil sent to S&M have the following language:

> This is a blanket PO. Written conf of schedules required within 48 hrs of recpt.  All good/material must be 100% cert.  One lot per pallet.  Facil part # on all boxes.

---

[1]  The 2005 Purchase Order has not been submitted to this Court. Facil asserts that neither party can find the original 2005 Purchase Order.  Neither party disputes that the terms of the agreement are the same as those in the 2006 Purchase Order.

> Quantities are firm 4 wks out from due date. All other release quantities are for plan only. Total EAU will be based on Facil customer releases; both increases and decreases. This also applies to all build outs.

(Id.)  The releases have no other contractual language on them.  (Id.)  When S&M would ship the items ordered by Facil via a release, they would send Facil an invoice.  An S&M invoice from March 28, 2006, lists the "quantity ordered" as 80,000 parts (the amount requested from a Facil release) and the "quantity shipped" as 80,000 parts.  (Id. at Ex. F.)  It also lists the price per unit, corresponding to the Purchase Order and provides the total invoice amount due (the 80,000 parts multiplied by the price per unit).  (Id.)

In addition to these documents, S&M has provided three emails which it asserts are relevant to the terms of the agreement between S&M and Facil.  The first email is dated June 27, 2005, from Facil to Michael O'Shea, President of S&M.  It states: "Please consider this e-mail authorization to proceed with zinc mechanical plate plus trivalent chromate without torque control lubricant for W7044858 S437M."  (Compl., Ex. A.)  This email is provided by itself, no other emails in a chain or other context is provided.  The second and third emails are part of a chain. On September 27, 2005, Mr. O'Shea sent an email to Rishi Kapoor of Facil.  The email states:

> We have stock on this part for all of the releases you sent.  I ordered material for the next releases. [T]his is a special thickness and I have to order 40,000 lbs. to get a good price.  This will produce about 2,300,000 Pcs.  Will this be ok?
> How do you want us to ship when we ship by truck.  Will we receive a blank order for the parts we [are] making for Facil?

(Index of Exs., Ex. E.)  On October 3, 2005, Mr. Kapoor replied to this email, stating: "At the time of order issuance . . . a blanket order was sent to your company."  (Id. (ellipsis in original).) No other emails in this chain or other type of response from Mr. Kapoor or another Facil employee has been provided to this Court.  S&M did order the 40,000 pounds of raw material

referred to in its email to Facil. (Pl.'s L.C.R. 56.1 Stmt. of Undisputed Mat'l Facts, ¶ 1 [hereinafter "Pl.'s Stmt. of Facts"].)

After losing over 80% of its business, Facil determined in August of 2006 that "it was no longer economically feasible to continue . . . as a viable business entity." (Index of Exs., Ex. G., Dec. of David J. Nenno.) On August 30, 2006, Facil informed S&M that it would not be placing any new orders with S&M for the parts subject to the Purchase Order because they would no longer be supplying their customers with these parts. (Cert. Of Ursula H. Leo, Ex. D (email from Facil to Michael O'Shea.)

## **LEGAL STANDARDS**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." On a summary judgment motion, the moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assertions, bare allegations, or speculation. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). But, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**DISCUSSION**

Both parties agree that there was a contractual relationship between them for the supply of retainer rings by S&M to Facil. The parties disagree over the terms of the agreement. S&M generally argues that the contract was based on the blanket Purchase Order with no end date, which incorporated the EAU from the request for quote and a guarantee regarding equipment upgrades necessary to supply the parts. (See Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 1 [hereinafter "Pl.'s Opp'n"].) S&M additionally argues that communications between S&M and Facil obligated Facil to purchase certain unused raw materials. (Id. at 9.) Specifically, S&M argues that Facil breached the agreement "by reducing and terminating its orders from S&M prior to termination of the contract" and by failing to give adequate notice of termination. (Id. at 2, 9.) Thus, S&M argues that Facil is liable for equipment upgrades valued at $132,000 and inventory valued at $67,243.51. (Id. at 5.) Facil, on the other hand, argues that the contract consisted of the Purchase Order, which committed Facil only "to pay for parts manufactured and delivered" pursuant to releases and which did not incorporate the EAU. (Mem. of Law in Supp. of Def.'s Mot. for Summ. J., at 9 [hereinafter "Def.'s Summ. J. Mem."].) Facil also disagrees that the communications referenced by S&M placed any additional obligations on it. (Id. at 7-8.)

**A.      Choice of Law**

The Purchase Order does not state what law is to govern its construction or interpretation. The parties appear to assume that the law of New Jersey applies; both refer to the application of New Jersey law in their briefs. Although normally this Court must apply New Jersey's choice of law rules to determine what law should apply, see Warriner v. Stanton, 475 F.3d 497, 499-500 (3d

Cir. 2007), this Court finds such an analysis unnecessary in this case as the law of New Jersey, S&M's principal place of business, and Michigan, Facil's principal place of business, are not in conflict. Therefore, this Court, like the parties, will apply New Jersey law.

**B.      Application of New Jersey Statutes Annotated § 12A:2-306**

As an initial matter, although the parties make arguments in their briefs as to whether a breach occurred if the contract between them is treated as a requirements contract, both parties actually appear to agree that the contract between them was not a requirements contract subject to New Jersey Statutes Annotated § 12A:2-306. (See Def.'s Summ. J. Mem, at 15; Pl.s Opp'n, at 6.) Both parties agree that there was no exclusivity clause in their agreement, making § 12A:2-306 inapplicable. Accord Mich. Comp. Laws. § 440.2306. This Court agrees and will, therefore, treat this as a standard breach of contract claim.

**C.      Interpretation of Contracts Under New Jersey Law**

Unless contract terms are ambiguous, "[t]he interpretation or construction of a contract is usually a legal question for the court" that is appropriate for resolution on a summary judgment motion. Driscoll Constr. Co. v. State, 853 A.2d 270, 276 (N.J. Super. Ct. App. Div. 2004). Additionally where terms of the agreement are "set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms . . . [, they] may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by [the] course of performance [between the parties]." N.J. Stat. Ann. § 12A:2-202; accord Mich. Comp. Laws. § 440.2202. Clear terms may also not be altered by "the secret, unexpressed intent of a party . . . [; a] party is bound by the apparent intention he or she

outwardly manifests to the other party." Domanske v. Rapid-American Corp., 749 A.2d 399, 402 (N.J. Super. Ct. App. Div. 2000).

Aside from the expressed terms, an obligation of good faith and fair dealing is implied in every contract subject to the Uniform Commercial Code ("U.C.C."). N.J. Stat. Ann. § 12A:1-203; accord Mich. Comp. Laws. § 440.1203. But, this "does not give a court the power to impose additional obligations on one contracting party because a court concludes it is unfair to have the other shoulder a market risk that the former expressly bargained to avoid and the other expressly agreed to assume." U&W Indus. Supply, Inc. v. Martin Marietta Alumina, Inc., 34 F.3d 180, 186 (3d Cir. 1994). This implied obligation merely "controls the manner in which the contracting parties carry out the obligations they have undertaken in a contract." (Id.) Finally, if a contract does not include a termination provision but is for an indefinite duration and provides for successive performances, it is terminable at will be either party. N.J. Stat. Ann. § 12A:2-309; accord Mich. Comp. Laws. § 440.2309.

**D.      S&M's Breach of Contract Claims**

In this case, what S&M essentially argues is that the price term in the Purchase Order incorporated a minimum quantity equal to the EAU from the request for quote. Interestingly, however, S&M is not seeking the profits based on the difference between the EAU and the amount actually purchased by Facil. S&M also appears to argue that the price term included a guarantee that if Facil did not purchase the EAU, it would be responsible for the equipment upgrades that S&M claims it built into its prices. The Purchase Order does not contain a specific quantity term, any reference to minimum order requirements, any reference to charges to be

incurred if that minimum was not ordered, or guarantees regarding the equipment upgrades. Knowing equipment upgrades will be necessary for performance does not equate to an agreement for reimbursement for those upgrades where no documents presented to this court, except one vague email, even mentions them.  Additionally, looking back to the request for quote at the EAU as evidence of a fixed or minimum quantity term in the agreement is not appropriate where the document both parties admit is core to their relationship, the Purchase Order, has an open quantity term–it was a blanket agreement–with deliveries to be determined according to releases.  Looking forward from the Purchase Order at the parties' course of performance, there is no indication that performance by either party was based on the EAU as expressed in the request for quote.  Specific orders were placed by Facil via release.  Each release expressly stated: "Total EAU will be based on Facil customer releases; both increases and decreases."  S&M shipped according to the releases, providing invoices that showed a "quantity ordered" equal to the "quantity shipped," not the EAU.  Even if some argument could be made that the Purchase Order somehow contemplated the EAU, S&M's acquiescence to the language in the releases, as evidenced by its shipping of orders according to them without objection, supports Facil's position that the EAU and quantity of parts Facil was obliging itself to purchase  was only to be determined by reference to the releases and not to any pre-Purchase Order quote.  See N.J. Stat. Ann. § 12A:2-208(1) ("Where [a] contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."); accord  Mich. Comp. Laws. § 440.2208(1).  S&M, on the other hand, argues that "[s]ince one release did not cover all the parts, obviously the blanket order

contemplated the overall agreement for the EAU at the price quoted by S&M." (Pl.'s Opp'n, at 10.) This Court disagrees.

Regardless of what S&M internally based its pricing on, the fact is that it did not express its alleged understanding on the documents that controlled the relationship between itself and Facil. In fact, in arguing that Facil was obligated to pay for its unused raw material inventory, discussed below, S&M points to an email where it asks Facil if it was okay to order bulk materials, which would produce 2,300,000 pieces. If S&M believed that the Purchase Order obligated Facil to purchase the EAU from the request for quote, a number higher than this amount for either part, such a question would be unnecessary. Therefore, this Court finds that the Purchase Order did not incorporate the EAU from the request for quote or set any minimum purchase requirement.

Since there has been no allegation that Facil failed to perform its obligations under the releases it issued, Facil did not breach the agreement by deciding not issue any new releases, thereby ending the supply relationship. The agreement was of indefinite duration and terminable at will by either party. Given the type (non-exclusive) and terms of the agreement of the parties and the economic situation faced by Facil, notice in August that Facil would not be issuing any new releases after completion of outstanding orders (which according to Facil continued until November, see Def.'s Rep. to Pl.'s L.C.R. 56.1 Stmt. ¶ 7) was not unreasonable. S&M's argument that reasonable notice equals the time for it to find a substitute supplier who would permit it to recoup all of its costs is basically equivalent to its argument that Facil was obligated for the EAU, which this Court finds unsubstantiated. S&M also argues that failure to buy

additional parts represented a termination in bad faith because one of Facil's end purchasers had agreed to purchase Facil's remaining inventory. On the contrary, Facil explicitly informed S&M that it would honor any open releases and minimum buy requirements, and its customer had not agreed to buy all inventory, but only "Facil's non-cancelable purchase obligation[s] from their supplier." (Pl.'s Opp'n, at 3.) In any case, Facil's arrangement with its customer is a result of the agreement negotiated between those parties; Facil's obligations to S&M are governed by their agreement, which did not include any termination provision and was terminable at will.

S&M also asserts that subsequent to the Purchase Order, Facil agreed to the purchase of 40,000 pounds of raw materials. (Pl.'s Opp'n, at 9.) S&M states that "[w]hen asked whether S&M's purchase of raw materials was acceptable, [Facil] answered that the blanket order was sent." (Id.) In fact, the email in question asked three questions, one of which asked whether S&M would receive a blanket order for the parts it was making. Facil answered that a blanket order was sent; there was no response to the question regarding the purchase of the raw materials. Even if Facil's response was ambiguous, S&M has submitted no additional evidence of confirmation or clarification of its understanding, relying solely on this email exchange, and it continued to fill orders according to Facil's releases which contained the language that total EAU was based only on Facil's releases. Also, no subsequent S&M invoices presented to this Court show that the quantity ordered was now 2,300,000 parts. Therefore, this Court finds that this single email exchange, where Facil did not reply to S&M's question, did not obligate Facil to purchase 2,300,000 parts or any unused raw materials, especially given the subsequent performance between the parties.

S&M argues that "[i]t is not the intent of the law to protect a buyer who represents it is going to purchase a large quantity of an item, and then after obtaining favorable pricing based upon the volume ordered, terminate the contract." (Id. at 8.)  However, as expressed by a district court in Michigan in a case with very similar facts: "There is no question that the terms of this contract are tough terms. Sympathy for plaintiff's position does not change the result.  Plaintiff's difficulty is a result of the type of contract it negotiated and to which it agreed." Advanced Plastics, Corp. v. White Consol. Indus., Inc., 828 F. Supp. 484, 488 (E.D. Mich. 1993).  Courts simply are not free to rewrite contracts when subsequent events result in an outcome that one party finds to be less favorable than originally anticipated.

## CONCLUSION

Because this Court finds that the contract terms at issue are unambiguous and that Facil did not breach the agreement, Facil's motion for summary judgment is granted.  An appropriate Order accompanies this Opinion.

DATED: January 16, 2009                    /s/ Jose L. Linares
                                           JOSE L. LINARES
                                           UNITED STATES DISTRICT JUDGE